**Cleveland CHATMON**

v.

**CHURCHILL TRUCKING CO.**

**No. 79 0195 CV W 4.**

United States District Court,
W. D. Missouri, W. D.

March 19, 1979.

Cleveland Chatmon, pro se.

Monti L. Belot, Weeks, Thomas, Lysaught, Bingham & Mustain, Chtd., Kansas City, Kan., Joseph M. David, Jr., Stinson & Mag, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

On March 8, 1979, plaintiff herein filed a pleading in this Court styled "Petition to Register Foreign Judgment". He paid the filing fee and necessary service fees to the Marshal and the case was filed by the Clerk as a new civil action. In pertinent part the petition reads:

3. The plaintiff has a Claim against the defendant Churchill Trucking Company in the sum of ($2,000,000) Two Million Dollars, interest and costs.

4. The Claim arose on or about January 20, 1977, as the result of entry of default judgment entered and rendered on the 4th day of February 1977 . . ..

5. The certified copy of the Notice of entry of Default Judgment is attached to this petition and this application for reg-

istration of said judgment is made by verified petition to this Court, with a certified copy of the Judgment of the United States District Court for the District of Kansas AUTHENTICATED IN THE MANNER AUTHORIZED [sic] by laws of the United States.

.    .    .    .    .

Wherefore plaintiff prays that the Judgment be registered in the sum of ($2,000,-000) Two Million Dollars.

The "certified copy of the Judgment" described by plaintiff is, in reality, a letter to plaintiff from Arthur G. Johnson, Clerk of the United States District Court for the District of Kansas, dated February 4, 1977. It reads:

In reply to your letter of February 1, 1977, I would advise that our office properly filed your affidavit of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The filing of such a pleading simply establishes that the answering party is in default of pleading.

Thereafter a default judgment may be entered by the Clerk of the Court depending upon the nature of the plaintiff's claim, Rule 55(b), F.R.C.P. Where the plaintiff's claim is for a sum certain or for a sum that can be made certain by computation . . ., the Clerk may enter judgment, Rule 55(b)(1), F.R.C.P. In all other cases the party seeking judgment shall apply to the judge therefor and proceed as mandated by Rule 55(b)(2), F.R.C.P.

I believe, under the provisions of Rule 55, F.R.C.P., our office acted properly and that your relief must be afforded by the Court.

The copy of this letter submitted by plaintiff bears the stamp and seal of the United States District Court for the District of Kansas showing that it is a true and correct copy of a document on file with that Court.

Attached to the petition are documents styled as "Notice to Clerk of Court Rendering Judgment", and an "Application for Writ of Attachment, Sequestration and Assistance."

Defendant has moved to dismiss this action on the ground that the petition is facially insufficient to show that any judgment has been entered in plaintiff's favor. Defendants also request "such relief as may be necessary and appropriate to permanently prohibit plaintiff from abusing this Court as well as the defendants . . .." To determine the merits of this motion, it is necessary to trace the path of plaintiff's past dealings with this and other Courts. The "saga", as counsel for defendant aptly puts it, begins in the District of Kansas.[1]

On October 7, 1977, the Honorable Earl E. O'Connor, United States District Judge for the District of Kansas, entered an order dismissing *Chatmon v. Churchill Truck Lines*, No. 76–241–C2, the case underlying this action, when plaintiff refused to respond to interrogatories served upon him by defendant despite an order of the Court to do so. Four days later, Judge O'Connor entered an order denying plaintiff's "Motion for Judgment on Surety Bond".

On February 2, 1978, Judge O'Connor entered an order that reads in pertinent part:

Since January 20, 1977, plaintiff has consistently contended that he has obtained a default judgment against the defendant in the sum of Two Million Dollars. The court has, on numerous occasions, informed plaintiff that he is incorrect and that no such judgment has been obtained. (Memorandum and Order of February 16, 1977; Memorandum and Order of March 11, 1977; Memorandum and Order of April 21, 1977; and Order of August 25, 1977). On September 30, 1977, in open court, the court once again painstakingly explained to the plaintiff that he had obtained no judgment. . .

Since October 13, 1977, plaintiff has continued to file documents in an apparent attempt to collect on his non-existent "judgment." Some of these documents have even been served by the United States Marshal, including one self-styled "Writ of Execution . . .."

Judge O'Connor's order directed the Clerk of his Court and the United States Marshal "to refrain from processing or serving any document filed by plaintiff, which is a further attempt to execute upon [his] non-existent "judgment." Judge O'Connor also directed plaintiff to show cause why he should not be permanently enjoined "from further abusing the processes of this court by making further attempts to execute on his non-existent 'judgment.'"

In an order entered February 16, 1978, Judge O'Connor noted that plaintiff had made no attempt to respond to the earlier show cause order:

Instead, undaunted and undiscouraged by six previous rulings of this court to the effect that plaintiff has not obtained and is not entitled to a default judgment, plaintiff has attempted to file a document which he has presumptuously entitled "MANDATE". . . .

The plaintiff has continually abused the processes of this Court. A litigant, of course, may not obtain a judgment, a mandate, or seize property via a writ of execution merely by drawing and signing a self-serving document stating that he has obtained a judgment and having such document file stamped by a clerk of a court. Since plaintiff has consistently disregarded the orders of this court, and gives every indication that he intends to keep doing so, the court feels it has no choice but to sustain defendant's motion and enter the requested injunction against plaintiff.

Judge O'Connor therefore enjoined plaintiff from making further attempts in the District of Kansas "to execute upon his non-existent 'judgment'", and ordered the Clerk and Marshal to refuse to process or serve any document that was a further attempt to execute upon the judgment. Judge O'Connor also ordered that "any document which is an attempt to execute upon plaintiff's non-existent 'judgment' shall be

---

1. The Court's narration on this point has been reconstructed from records of this Court, records submitted to this Court by the District of Kansas after a request by the Clerk of this Court, and records submitted in connection with the motion to dismiss.

stamped 'RECEIVED' and retained by the Clerk but not 'FILED' in the official court file."

Approximately one year later, on February 7, 1979, Judge O'Connor was forced to take further action upon plaintiff's case in the District of Kansas. Noting that plaintiff had attempted to serve upon defendants documents in support of his non-existent "judgment" "impressed with the seal of this Court, apparently in an effort to impart to them authenticity which is intended to mislead the recipient . . . into believing that the documents are orders issued by this Court", Judge O'Connor directed the Clerk not to furnish to plaintiff or anyone acting on his behalf, except an attorney duly authorized to practice in that district, "copies of any pleadings or documents from this Court's files pertaining to matters between the plaintiff and defendants Churchill Truck Lines, Inc. and The Aetna Casualty & Surety Company." Judge O'Connor also directed the Clerk not to "stamp or otherwise impress upon any pleading or document provided by or on behalf of the plaintiff any mark which bears the seal of this court or the signature of any officer or employee thereof."

Shortly after this order was entered, plaintiff apparently attempted to file a new, identical action in the District of Kansas raising identical allegations. The case, *Chatmon v. Churchill Truck Lines, Inc., et al.,* No. 79–4026, was assigned to the Honorable Richard D. Rogers, United States District Judge. Judge Rogers entered an order stating: "Judge O'Connor's February 16, 1978 order (if it does not already do so) [is] extended to ban plaintiff's attempt to collect upon his non-existent judgment even under the guise of a new case."

Summarizing, federal judges in the District of Kansas who have subject matter and personal jurisdiction over plaintiff and his action have entered an injunction barring plaintiff from using their court to collect upon his non-existent judgment through proceedings in his original case or by a new action. Also pursuant to that injunction, Court personnel in Kansas are barred from processing any document that can be construed as an attempt by plaintiff to execute upon his non-existent judgment there, providing any stamp, seal or signature on any pleading provided by plaintiff, marking any pleading provided by plaintiff with anything other than a "received" stamp, filing any documents from plaintiff in the case file, or affixing the Court's "filed" stamp to any documents submitted by plaintiff.[2]

The matter does not end there, however. The Court notes that on numerous past occasions, especially in 1977, plaintiff has attempted to pursue his non-existent judgment in this Court. As an example, the Court notes that a letter was mailed by the Clerk to plaintiff on June 23, 1977. It reads in pertinent part:

We have received a packet of documents, a money order for $15.00 and your letter demanding that this office file your documents as a Registration of Judgment.

We must repeat the substance of all your other conversations with this office. Until such time, if any, as you file a CIV–101 form properly signed and attested by the Clerk of the United States District Court for the District of Kansas, together with a true copy of the original judgment signed by the United States District Judge hearing your case, we cannot enter your Registration of Judgment here. . . . The documents you have sent us can *never* be used as a substitute for the forms described above. We are therefore returning them to you.

[Emphasis original.] The letter, which was signed by the Clerk of the Court and its Staff Attorney, also noted that the use of a "filed" stamp by a court means only that the document has been received and placed

---

2. A virtually identical injunction barring plaintiff from using the Kansas state Courts was entered by the Wyandotte County, Kansas, District Court on June 12, 1978. The United States Court of Appeals for the Tenth Circuit has also refused to file similar pleadings filed by plaintiff.

in the appropriate file, and that certification that a copy is correct only means that the certified copy is an exact duplicate of one in the possession of the Clerk. The letter continued, "Neither stamp entitles you to a judgment, and the fact that documents were so stamped does *NOT* mean that a default judgment has been entered in your favor." [Emphasis original.]

The foregoing recitation makes clear several points: (1) plaintiff has *never* received a judgment in his favor in the District of Kansas against defendant in this action. Accordingly, there is nothing to register in this court and this action may be dismissed on that basis. (2) From his involvement with this and other Courts, plaintiff is well aware of the procedures involved in registration of a foreign judgment, the use and effect of various stamps and certifications issued by the courts of the United States, and the meaning of default and default judgment. (3) In view of plaintiff's past involvement with this and other federal and state courts, his attempt to prosecute this action can only be described as a deliberate attempt to harass defendant and circumvent the lawful injunctions issued against him in the federal and state courts in Kansas. *Green v. Wyrick,* 462 F.Supp. 357 (W.D.Mo.1978); *Carter v. Telectron,* 452 F.Supp. 944 (S.D.Tex.1977).

This Court will not permit plaintiff to circumvent a lawful injunction issued by a court of coordinate jurisdiction having personal jurisdiction over him and subject matter jurisdiction over his case. This Court has a clear obligation to protect the litigants before it from abuse, harassment or exploitation. *Green v. Wyrick, supra,* at 360. Accordingly the terms of the injunction issued against plaintiff by Judge O'Connor and amplified by Judge Rogers, together with the ancillary orders issued to enforce the injunction, will be given full effect in this district. Any other course would permit plaintiff to continue a pattern of judicial abuse that is intolerable.

It is therefore

ORDERED (1) that defendant's motion to dismiss should be and it is hereby granted.

This action is hereby dismissed. It is further

ORDERED (2) that plaintiff should be and he is hereby enjoined from making further attempts to execute upon a non-existent judgment allegedly issued in his favor and against the Churchill Trucking Company or Aetna Life & Casualty Company in the District of Kansas in this Court, whether those attempts are by proceedings ancillary to any or all of his past actions in Kansas or by a new civil action in this Court. It is further

ORDERED (3) that any document submitted by or on behalf of plaintiff relating to the non-existing judgment described in (2), *supra,* shall be marked "received" by the Clerk's Office and retained but not marked "filed" with the Court's file stamp or placed in the official court case file. It is further

ORDERED (4) that the Clerk of the Court and the United States Marshal shall refrain from processing or serving any document filed by plaintiff that is a further attempt to execute upon the non-existent judgment described in (2), *supra,* whether styled as a pleading or motion in an already pending case or as a new case, except as described in (3), *supra.* It is further

ORDERED (5) that the Clerk of the Court and his deputies or employees shall not furnish to the plaintiff or anyone acting upon his behalf except an attorney at law duly admitted to practice in this Court copies of any pleadings or documents from this Court's files pertaining to matters between plaintiff and defendant or the Aetna Casualty & Surety Company. It is further

ORDERED (6) that the Clerk of this Court and his deputies or employees shall not stamp or otherwise impress upon any pleading or document provided by or on behalf of plaintiff any mark which bears the stamp or seal of this Court or the signature of any officer or employee thereof.