The PEOPLE OF THE STATE OF
COLORADO, Plaintiff,

v.

Albert H. CARTER, Defendant.

Civ. A. No. 86 F 204.

United States District Court,
D. Colorado.

Sept. 4, 1986.

Neil J. Tillquist, Asst. Atty. Gen., General Legal Services Section, Denver, Colo., for plaintiff, State of Colo.

Albert H. Carter, pro se.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER came before the Court for trial on August 11, 1986. We have carefully considered all of the evidence presented, the testimony of the witnesses, and the applicable law. The following constitutes the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52.

### I.

This action was instituted by the State seeking to enjoin defendant from initiating or prosecuting any pending civil claim in this federal district without the representation of counsel.[1] Defendant has alleged in several court filings that he is a fulltime college student and that his college program precludes any outside employment. He asserts he has no assets, and lives on his college entitlements and intermittent contributions from his family. Defendant has a long history of filing pro se complaints generally without payment of filing fees. For chronological purposes, *see Carter v. Telectron*, 452 F.Supp. 944 (S.D.Tex. 1977). The vast majority of these cases have been found to be frivolous and/or vexatious. *Id.* In recent years, Mr. Carter has initiated at least fifteen civil actions in this district. *See* plaintiff's Exhibit 12 attached hereto as Appendix A. Most of these cases have been dismissed as frivolous or lacking subject matter jurisdiction. *See, e.g., Carter v. Goldberger, et al.*, No. 85 F 2231, Oct. 9, 1985.

We first note that we have jurisdiction of this action by virtue of the

---

1. Such an injunction would not restrict the defendant from defending actions pro se.

Court's inherent authority to control judicial actions taken by litigants who come before the Court. *Turner v. American Bar Association,* 407 F.Supp. 451 (N.D. Tex.1975). Second, we find that plaintiff has standing to pursue this matter. *In re Martin–Trigona,* 737 F.2d 1254 (2d Cir. 1984).

## II.

■ The United States Constitution lacks any explicit guarantee of access to the federal courts. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (Rehnquist, J. dissenting). Nevertheless, this right is deeply embedded in federal constitutional law. *See Gulf, Colo. & S.F. Ry. v. Ellis,* 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897). Court access remains premised, however, on the assumption that litigants will obey the rules and proceed in good faith. There is "no constitutional right of access to the courts to prosecute an action that is frivolous or malicious". *Phillips v. Carey,* 638 F.2d 207, 208 (10th Cir.1981); *Duhart v. Carlson,* 469 F.2d 471, 478 (10th Cir.1972), *cert. denied* 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973); *Board of County Comm'rs v. Barday,* 197 Colo. 519, 594 P.2d 1057 (1979). A pro se litigant must recognize the authority of judicial decision and conform his behavior to it. *Kane v. City of New York,* 468 F.Supp. 586 (S.D.N.Y.), *aff'd mem.,* 614 F.2d 1288 (2d Cir. 1979).

■ The Court has authority to control and manage matters pending before it. This includes trial and pre-trial actions. *Turner v. American Bar Association,* 407 F.Supp. 451 (D.C.Tex.1975); *In re Sarelas,* 360 F.Supp. 794 (D.C.Ill.1973), *aff'd,* 497 F.2d 926 (7th Cir.1974). The need for such control bears noting. First, Rule 1 of the Federal Rules of Civil Procedure provides that the rules shall be construed to secure the just, speedy, and inexpensive determination of every action. Three fundamental goals underlie this mandate: maintaining the quality of justice, avoiding delay, and improving the efficiency of dispute resolution. In order to secure these values, we must recognize that judicial resources are limited in the short run and need to be protected from wasteful consumption. *See Hanson v. Goodwin,* 432 F.Supp. 853 (W.D.Wash.1977). Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims. *See, e.g., In re Green,* 598 F.2d 1126 (8th Cir.1979).

The most apparent effect of excessive litigation is the imposition of unnecessary burdens on, and the useless consumption of, court resources. *See In re Martin–Trigona,* 573 F.Supp. 1237, 1242 (D.Conn.1983) (noting plaintiff's fifty cases before one judge). As caseloads increase, courts have less time to devote to each case. A lack of adequate time for reflection threatens the quality of justice. *See Franklin v. Oregon,* 563 F.Supp. 1310, 1319 (D.Or.1983). Second, long delays in adjudication create public dissatisfaction and frustration with the courts. Such delays also result in the unfortunate continuation of wrongs and injustices while the cases that would correct them sit on court calendars. Third, abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims.

■ Defendants have a right to be free from harassing, abusive, and meritless litigation. *See Theriault v. Silber,* 574 F.2d 197 (5th Cir.1978). Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior. *Chatmon v. Churchill Trucking Co.,* 467 F.Supp. 79 (D.Mo.1979). The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. *Phillips v. Carey,* 638 F.2d 207, 209 (10th Cir.1981). These restrictions may be directed to provide limitations or conditions on the filing of future suits. *Id.*

Other courts have not hesitated to place severe restrictions on pro se litigants who have repeatedly abused the judicial pro-

cess. For instance, in *In re Martin–Trigona*, 763 F.2d 140 (2d Cir.1985), the court upheld an injunction issued by the district court which: (1) requires Mr. Martin–Trigona to obtain leave of the court prior to making any filing in any case brought by him or on his behalf within the district; (2) prohibits him from initiating lawsuits or other matters in any federal, state, or local forum against persons or entities that have encountered him or had any connection with litigation involving him in the Bankruptcy Court or the District Court for the District of Connecticut or the Second Circuit Court of Appeals; (3) prohibits him from filing any new action in any federal court without first obtaining leave of court; and (4) requires him to append pertinent informational materials to pleadings in state courts.

The Supreme Court of the State of Colorado has not hesitated to enjoin litigants from proceeding pro se in the state courts of Colorado. In *People v. Dunlap*, 623 P.2d 408 (Colo.1981), the defendant filed a series of frivolous lawsuits against, among others, state patrolmen, a county judge, a deputy district attorney, the clerk of the district court, all judges of the Fifteenth Judicial District, and the Governor of the State of Colorado. The Supreme Court found that (1) the respondents pressed claims which had already been adjudicated as without merit, and (2) their method of procedure—expanding joinder of defendants to include lawyers, judges, and other parties perceived as opposing them in the earlier litigation—threatened a serious strain on the judicial resources of the state. Accordingly, the court ordered that "the respondents be prohibited from further representing themselves as plaintiffs in any present or future actions related to or

arising out of their involvement with public officers or public employees". *Id.* at 411.

A similar injunction was issued in *Board of County Commissioners v. Barday*, 197 Colo. 519, 594 P.2d 1057 (1979). In *Barday*, the respondent filed seven complaints in the state and federal district courts in the State of Colorado. The numerous suits all stemmed from marital difficulties between the respondent and his ex-wife. In three years, a total of 26 defendants had been drawn into litigation by the respondent. The court concluded that either (1) the respondent had no legal claim and was persisting in his lawsuits merely to harass his ex-wife and those who decided to oppose him, or (2) that the respondent needed an attorney to structure his claims for him so that the cases could proceed. *Id.* 594 P.2d at 1059. "In either case, he has no right to further burden the state court system by the methods he has heretofore employed." *Id.* *See, also, People v. Spencer*, 185 Colo. 377, 524 P.2d 1084 (1974) (respondent enjoined from proceeding pro se as plaintiff); *Shotkin v. Kaplan*, 116 Colo. 295, 180 P.2d 1021 (1947) (Shotkin enjoined from appearing pro se).

### III.

We must decide whether, on the facts presented by this case, enjoining Mr. Carter from proceeding as a pro se plaintiff in this district is a reasonable restriction, warranted by his abuse of the legal process. In so deciding, we will consider the *Telectron* decision only to the extent that it establishes a chronological history of the defendant's current practices.[2] We note, however, that since the *Telectron* decision (in which the court documented that Mr. Carter had filed at least 178 cases),[3] there

2. *See* Order dated August 6, 1986.

3. In *Telectron*, 452 F.Supp. 944 (S.D.Tex.1977), the district judge ordered plaintiff to satisfy the following requirements in every case filed in federal or state court: (1) personally send a copy of any Complaint to defendants or defense counsel, and submit evidence to that effect to the Court in which such Complaint is filed; (2) personally send to counsel a copy of every pleading to be filed with the respective court before such pleading is filed, and submit proof to that effect to the Court; (3) submit only verified pleadings; (4) include in every Complaint or petition a list of related claims previously filed on the same or related issues, or against any of the defendants; (5) include with every Complaint or petition filed a statement referring to the *Telectron* order; and (6) send a copy of every case filed to the Staff Law Clerk of the Houston Division, Southern District of Texas.

have been at least forty-five federal cases reported in Westlaw involving defendant. *See* Plaintiff's Exhibit 13. Moreover, the defendant has initiated at least fifteen civil actions in this federal district. *See* Plaintiff's Exhibit 12.

■ Mr. Carter's extensive legal dealings have exposed him to a smattering of knowledge of the legal process. Yet, having reviewed the files of the fifteen cases filed in this district and having observed him in court, it is apparent that the defendant either does not understand important basic concepts of jurisdiction, courtroom procedure, and the appellate process, or that he has chosen to ignore these concepts at his leisure. While we have an obligation to give pro se litigants wide latitude in their dealings with the court, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we cannot countenance filing repetitious, meritless suits. As the following discussion of Mr. Carter's cases in this district indicates, Mr. Carter has followed a steady course of conduct in filing lawsuits in an irresponsible way. Moreover, it is clear that many of these actions have been instituted vexatiously and as a continuation of his personal vendetta against all who happen to be put in a position which he perceives to be inapposite to his desires and demands.

We have examined the entire files in each and every case which the defendant has filed in this district. We conclude the following:

(1) *Mr. Carter has continuously filed duplicative causes of action which are frivolous, vexatious, and without legal merit.*

For example, prior to Mr. Carter's filings in this district, he had attempted to attack the validity of his discharge from the United States Air Force on a number of occasions. *See Carter v. Telectron*, 452 F.Supp. 944 (S.D.Tex.1977). Each of these attacks were dismissed. *Id.* In 1982, Mr. Carter filed *Carter v. Pafenberg, et al.*, 82 JM 1329, contesting the validity of his dis-

charge. The trial court dismissed the action. Carter then appealed. At trial before this Court in the current proceeding, Mr. Carter vehemently asserted that the district court decision was affirmed on lack of venue grounds *only*. The Record on Appeal, however, irrefutably establishes that the appeal was dismissed for lack of prosecution. Case No. 83–1158, Oct. 14, 1983. In 1983, Mr. Carter filed *Carter v. Verne Orr*, 83 JM 103, again seeking to invalidate his military discharge. The District Court dismissed the action, finding it duplicative, and that his vexatious litigation tactics and failure to comply with the *Telectron* order warranted dismissal of the action. On April 19, 1985, the Court of Appeals affirmed, holding that the action was vexatious. Case No. 83–2661. In 1984, Mr. Carter filed an identical action in the District of Columbia. *See Carter v. Verne Orr*, 587 F.Supp. 436 (D.D.C.1984). The District Court dismissed the action on grounds of res judicata, and failure to comply with *Telectron*. The Court also ordered that any similar actions must comply with *Telectron* prior to filing the action in that court. *Id.* at 439.

In 1984, Mr. Carter filed *Carter v. Attorney General of the United States, et al.*, 84 Z 1017, seeking to invalidate his 1962 conviction for perjury. Mr. Carter had previously attempted, and failed, to prevail on this assertion. *See Carter v. United States*, 325 F.2d 697 (5th Cir.1963); *United States v. Carter*, 319 F.Supp. 702 (M.D.Ga. 1969), *aff'd*, 437 F.2d 444 (5th Cir.1971), *cert. denied*, 403 U.S. 920, 91 S.Ct. 2238, 29 L.Ed.2d 698 (1971); *Carter v. United States*, 83 Z 1017, *aff'd*, 733 F.2d 735 (10th Cir.1984). The District Court dismissed 84 Z 1017 on collateral estoppel grounds and for failure to comply with *Telectron*. The Court of Appeals affirmed. Case. No. 84–2546, April 23, 1985.

In 1977, Mr. Carter filed *Carter v. Blumenthal, et al.*, 77 W 695. This action was brought by Mr. Carter as an assignee of a constitutional claim. The District Court determined that such claims were not assign-

This brief summary of the final Order issued in *Telectron* is provided for historical reference only.

able and dismissed the case. The Court of Appeals affirmed. Case No. 77–2056, April 10, 1978. The Supreme Court denied certiorari. In 1977, Mr. Carter filed *Carter v. Bensinger,* 78 W 1120, again as an assignee of a constitutional violation claim. The District Court dismissed, noting that "this case is for all essential purposes a replay of *Carter v. Blumenthal* ". The Tenth Circuit affirmed. Case No. 79–1036, Nov. 30, 1979. In 1985, Mr. Carter filed *Carter v. Anders, et al.,* 85 K 1478, as an assignee of a claim under the Civil Rights Act. The District Court dismissed, holding, in part, that the complaint was clearly void on its face, as claims for damages under the Civil Rights Act are not assignable. The Court of Appeals affirmed. Case No. 85–2185, April 28, 1986. It is noteworthy that Mr. Carter had previously filed at least two cases as an assignee of alleged civil rights violations which were dismissed on the same grounds. *See Carter v. Romines,* 560 F.2d 395 (8th Cir.1977); *Carter v. Lynn,* No. H 77 259, (S.D.Tex.1977).

In 1985, Mr. Carter filed *Carter v. Levergne Marshall,* 85 F 2325, in which Mr. Carter sought, among other things, an order of this Court invalidating a state court order. We dismissed, finding that the action was substantially identical to an earlier case that we had dismissed, *Carter v. Goldberger, et al.,* 85 F 2231. We also held that principles of comity and federalism precluded our sitting as a reviewing court over a state court proceeding. Both dismissals were affirmed. Case Nos. 85–2586, 85–2721, April 28, 1986. Mr. Carter then filed *Carter v. United Airlines and Kim Goldberger,* 85 M 2735, seeking an order declaring a state court order invalid. The action was also dismissed. The Court held that the Complaint failed to state a claim for relief, as it was simply an effort to collaterally attack a state court judgment, to which the court was bound to give full faith and credit. The dismissal was affirmed on appeal. Case No. 86–1210, July 14, 1986. In 1986, Mr. Carter commenced *Carter v. Bachman, et al.,* 86 K 1219, which, in essence, seeks review of state court proceedings and actions undertaken by a state court clerk. This case is currently pending. Mr. Carter has also

filed *Carter v. Judge Murray Richtel, et al.,* 86 M 1167, seeking review of a state court order enjoining him from filing or maintaining any civil action in Boulder County until a Notice to Show Cause issued to Mr. Carter by the Colorado Supreme Court was resolved. The District Court dismissed for lack of jurisdiction.

In many of the cases discussed above, Mr. Carter has attacked the validity of the *Telectron* injunction. These attacks have repeatedly been held to be without merit. *See, e.g., Carter v. United States,* 735 F.2d 735 (10th Cir.1984).

(2) *Mr. Carter continuously disregards and refuses to follow standard methods of appeal.*

A review of the cases filed in this district clearly establishes that while Mr. Carter has had exposure to the normal course of appealing both state and federal trial court decisions, he often refuses to follow that course. *See, e.g., Carter v. United Airlines,* 85 M 2735 (1986). Mr. Carter asserted at trial that his practice of seeking relief in the federal courts from state court decisions, rather than through the state court appellate process, is supported by *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). We have carefully reviewed the *Logan* decision. In *Logan,* the Supreme Court ruled that the Illinois Supreme Court erred in ruling that dismissal of the petitioner's employment discrimination claim due to the Illinois Fair Employment Practices Commission's failure to convene a timely conference did not violate his rights to due process and equal protection. This decision simply does not, under any construction, lend support to defendant's position. Rather, it provides another poignant example of the defendant's misunderstanding of basic tenets of law and his willingness to make bald assertions with complete disregard for their accuracy.

(3) *Mr. Carter continuously engages in courses of conduct which evidence a disregard for the Court's procedures, and a lack of understanding of the rules of evidence and procedure.*

Mr. Carter's reluctance to cooperate with the courts is exemplified by his conduct in

this case. Mr. Carter has vehemently asserted his right to proceed *in forma pauperis* in this action; yet it was only with the greatest reluctance and prodding that he cooperated with the Court in enabling us to make the determination of whether he should be able to proceed in this manner. *See* Order dated July 23, 1986. As noted, at trial Mr. Carter's knowledge of court procedure was lacking. This fact underscores the need for this Order. He interposed meritless objections, and attempted to interject clearly irrelevant comments and evidence.

On another point it should be observed that Mr. Carter has continued to dispute the validity of the *Telectron* decision despite the clear ruling of the Tenth Circuit that a collateral attack on that decision was not viable. *Carter v. United States*, 735 F.2d 735 (10th Cir.1984).

(4) *Mr. Carter's conduct shows a total disregard for the limited resources of the Court and other litigants' right of access to the Court.*

The pattern of conduct which becomes apparent upon the examination of the panorama of actions filed by Mr. Carter in this jurisdiction is disturbing. This examination reveals that, in practically every case which is dismissed, Mr. Carter files a motion to reconsider and/or vacate the judgment. *See, e.g., Carter v. Goldberger*, 85 F 2231 (Mr. Carter also filed a Motion for Temporary Injunction and a Motion for Class Certification six days after our Order dismissing this action). If the Motion to Reconsider is denied, Mr. Carter then appeals to the Tenth Circuit, which in every case has affirmed the dismissal. Then, having lost that round, Mr. Carter merely refiles the case in a slightly different posture. The names change, but the claims remain the same. *Compare Carter v. Goldberger*, 85–2231 (1985) with *Carter v. Lavergne Marshall*, 85–2325 (1985). Meanwhile, litigants with meritorious claims are kept waiting, and are denied the speedy resolution of their disputes to which they are entitled.

█ If a licensed attorney conducted himself as Mr. Carter has, he would be subject to the severest of sanctions under the federal rules and the Code of Professional Responsibility. We demand a high level of performance in effecting the efficient administration of this Court's business. *See* Preface to Local Rules of Practice. The fact that Mr. Carter is appearing pro se does not relieve him from the obligation to comply with all applicable rules of this Court.

(5) *Mr. Carter files actions for vexatious and harassing purposes, with total disregard for the legal merits of the action.*

Mr. Carter's response to people who act in a manner which he perceives as adverse to his interests is to sue them. When a judge renders an adverse decision, he sues the judge. *See Carter v. Goldberger*, 85 F 2231, *Carter v. Lavergne Marshall*, 85 F 2325, *Carter v. Richtel*, 86 M 1167, *Carter v. Carl O. Bue*, 85 M 2579. Further, he does so with the knowledge, gained through adverse decisions, that his cases are frivolous. Each of the above cases was dismissed for lack of jurisdiction. If Mr. Carter perceives that he has been wronged by other court personnel, he sues them also. *See Carter v. Bachman*, 86 K 1219 (suit against state clerk of court for allegedly misfiling a notice of appeal). The only conclusion that can be reached from this course of conduct is that Mr. Carter uses the court system not to seek redress for legitimate injury, but rather as a means of harassing innocent citizens residing in this district.

(6) *Mr. Carter has misled this Court and other courts.*

We are of the view that Mr. Carter intentionally misled the Jefferson County Court in *Carter v. United Airlines, Inc.*, 85 C 2429. Mr. Carter initiated that action in the state court by filing a complaint in the court seeking $3,985.00 in damages for his wife's luggage which was lost by the airline. Mr. Carter initially attempted service by serving a travel agent with a complaint that set forth a damage claim of $39.85. This first summons was either disregarded, or never reached the defendant. A default

judgment for $4,054.02 was entered by the county court in Mr. Carter's favor.

The defendant filed a Motion for Relief from Judgment, asserting that they were never served. At the hearing on this motion, Mr. Carter produced a summons which was purported to have been served upon the defendant's registered agent. The court had, by this time, noted the discrepancies in the dollar amounts alleged in the two complaints. The court vacated the default judgment, and in order to put the matter at issue, found that the defendant had been properly served. Mr. Carter's motion to vacate the default judgment was denied. The matter was set for trial on August 15, 1985. On August 12, 1985, Mr. Carter sent a letter to the court stating that, "I feel so certain that the law is in my favor on the Motion to Reconsider that there is simply no point in my attending the scheduled August 15, 1985 trial.... I would put on no evidence whatsoever during the subsequent trial on the merits. Instead, I would simply rely on my prospects for an appellate reversal, which I feel would be a certainty."

At trial, the court dismissed Mr. Carter's claims, found that the action was frivolous and groundless and awarded the defendant attorneys fees. It was also brought to the attention of the court that the purported notary on the summons issued to the defendant's agent was in fact Mr. Carter's wife's daughter, Annette Conner. An affidavit of the Secretary of State established that Annette Conner was not a notary. During this trial, the testimony of Sergeant Fanciulli, a handwriting expert, established that Mr. Carter had forged both the signature of Annette Conner and the signature of the process server, M.L. Smith.

On December 31, 1985, Mr. Carter filed, in this court, *Carter v. United Airlines*, 85 F 2735, seeking an order that the August 15, 1985 judgment and order vacating his default judgment in the state case were invalid. Thus, Mr. Carter has attempted to perpetuate the misrepresentations made to the state court in this Court. On closing argument, Mr. Carter argued that while he did not forge these signatures, even if he

did, it did not make any difference. His premise for this assertion is that he is not required to have pleadings notarized if he signs them with a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. We do not find Mr. Carter's "no harm, no foul" argument persuasive. Rather, we consider it to be a glaring example of the utter disregard that Mr. Carter has for the need for candor before the court. Further, the testimony of Anne Carter, his former wife, established that Mr. Carter knew that the lost property was worth, at best, perhaps $400.00. Nevertheless, Mr. Carter proceeded to file a complaint alleging nearly $4,000.00 in damages.

While this may be the most serious example of Mr. Carter's propensity for playing fast and loose with the court, it is not the only one. Mr. Carter has a habit of attempting to mislead courts by subtlely misstating facts and law. For example, in *Carter v. United Airlines*, 85 M 2735, Plaintiff's Reply to Motion for Permanent Injunction mischaracterized Judge Weinshienk's order in 83 Z 494 as *specifically rejecting* a recommendation that plaintiff be enjoined from proceeding pro se. Such was not the case. Moreover, Mr. Carter has repeatedly asserted in this case, both in pleadings and in court, that the Tenth Circuit has never affirmed a district court's dismissal for failure to comply with the *Telectron* decision. These assertions are not correct. *See, e.g., Carter v. Attorney General of the United States*, 84 Z 1017. While the Tenth Circuit has, in some instances, affirmed the trial court on other grounds as well, it has not intimated or stated that Mr. Carter's failure to comply with *Telectron* is not a valid ground for dismissal.

### IV.

■ For the reasons stated, we feel that it is necessary to enjoin Mr. Carter from filing or appearing in any civil action in this district in which he is the proponent of a claim, without representation by a licensed attorney. Mr. Carter argues that such an injunction is unnecessary because, as he is indigent and must proceed in forma

pauperis, the Court may make an initial determination of whether his claim is frivolous. 28 U.S.C. § 1915(d). We disagree. This procedure has failed to adequately protect the court or insure integrity in the judicial process. Mr. Carter's habit of filing and refiling duplicative, frivolous claims exemplifies the inadequacy of his suggestion. Courts need not expend substantial judicial resources addressing frivolous claims that have already been litigated.

We also find that other procedural mechanisms to discourage meritless claims are not likely to succeed with Mr. Carter. Rule 11, Fed.R.Civ.P., a typically effective tool for dealing with frivolous claims, provides in pertinent part:

> [t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law of a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

> \* \* \* \* \* \*

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Rule 11 specifically applies not only to licensed attorneys, but also to pro se litigants. Moreover, 28 U.S.C. § 1927 (as amended Sept. 12, 1980) provides: "[a]ny attorney *or other person* admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." (Emphasis added.)

The financial sanctions available to the courts under Rule 11, Fed.R.Civ.P., and 28 U.S.C. § 1927 would be unavailing in Mr. Carter's cases, because of his persistent protestations that he is indigent. By such protestations, as well as through other maneuvers in the courts, Mr. Carter has effectively shielded himself from the controls which generally guard against frivolous claims, and ensure availability of just and speedy resolution of meritorious claims. The Rules, normally effective, have been consistently circumvented by Mr. Carter. We expressly find that Mr. Carter has flagrantly and repeatedly abused judicial process by filing a multitude of meritless law suits. It appears that this course of conduct will continue unabated unless preventive measures are imposed. To ensure the integrity of the judicial process, the court must impose some limitations on Mr. Carter's ability to file unwarranted lawsuits.

We reject Mr. Carter's assertion that our injunction denies him access to the courts. The testimony of Mr. Carter's own witnesses, Jonathan D. Asher, Esq., the Executive Director of the Legal Aid Clinic for Metropolitan Denver, and Mr. Gerald McDermott, Esq., President of the Colorado Trial Lawyers Association, established that it is likely that Mr. Carter would be able to obtain representation for future meritorious claims.

ACCORDINGLY, it is hereby ORDERED that Mr. Albert H. Carter is ENJOINED from proceeding as a proponent of any civil claim in the United States District Court for the District of Colorado without the representation of an attorney licensed to practice in the State of Colorado and admitted to practice in this Court. It is further ORDERED that all cases pending in the United States District Court for the District of Colorado in which Mr. Carter is plaintiff, and in which he does not proceed reasonably to employ counsel to represent him, shall be subject to dismissal.

The Clerk of the Court is DIRECTED not to accept any new pleadings initiating a civil action by Mr. Albert Carter unless he is represented by an attorney licensed to practice in the State of Colorado and by the United States District Court for Colorado.

This Order constitutes our findings of fact and conclusions of law. The Clerk is DIRECTED to enter judgment in favor of the plaintiff and against the defendant. Each party is to bear their own costs.

## APPENDIX A

### Plaintiff's Exhibit 12 at Trial

### SUMMARY OF FEDERAL DISTRICT COURT ACTION INITIATED BY ALBERT CARTER

The following is submitted for the court's convenience and represents a summary of the various courts' disposition of the lawsuits initiated by Albert H. Carter (Carter) in this federal district court for the District of Colorado:

A. *Carter v. United Airlines, Inc. and Judge K. Goldberger* (85–M–2735).

An action commenced by Carter to review state court proceedings in a lawsuit initiated by Carter against United Airlines, Inc.

1. *Proceedings at the federal trial court level.*

(a) Action dismissed—the trial court indicated it was "clear" that the complaint failed to state a cause of action and was simply an effort to collaterally attach a state court judgment.

2. *Proceedings at the federal court of appeals level.*

a) Dismissal affirmed—the appellate court stated in part, "in light of plaintiff's. (Carter's) legally frivolous appeal, an award of attorney fees and double costs is justified."

B. *Carter v. Judge Kim Goldberger, et al.* (85–F–2231).

An action commenced by Carter to challenge the constitutionality of remedy provided by state statute in a state court action before it was determined that Carter was subject to the remedy.

1. *Trial court.*

a) Action dismissed—trial court stated, in part, "We also find, however, that this action is frivolous, therefore, this complaint and cause of action is dismissed."

b) Carter filed several frivolous post-judgment motions, including motion for class certification, motion to enter a notice of appeal, and a motion for temporary injunction.

2. *Court of appeals.*

a) Dismissal affirmed.

C. *Carter v. Lavergne Marshall, et al.* (85–F–2325).

An action commenced by Carter asserting the substantially identical claim as in *Carter v. United Airlines* (85–M–2231), *supra*, which was dismissed only months earlier.

1. *Trial court.*

a) Action dismissed—trial court stated, in part, "This matter is before the Court on plaintiff's Motion for Preliminary Injunction. This motion, while not exactly the same form, is substantively identical to a prayer for relief filed by plaintiff in Civil Action No. 85–F–2231, which was dismissed October 9, 1985. There has been no change in circumstances since October 9, 1985 order.... Therefore, upon review of plaintiff's complaint and fully cognizant of our duty to liberally construe pro se complaints, see *Haines v. Kerner*, 404 U.S. 519 (1972), we are of the view that this action is frivolous, that we lack subject matter jurisdiction and that the interest comity dictate this matter be dismissed with prejudice."

2. *Court of appeals.*

a) Dismissal Affirmed.

D. *Albert H. Carter v. Burl Bachman, et al.*, (86–K–1219).

Carter sued state court clerk for allegedly failing to properly file his Notice of Appeal in *Carter v. Bachman* (Jefferson County Court No. 85CV3356). Carter's federal court complaint was clearly an attempt to review a state court proceeding in federal court. In particular, Carter has sued Bachman because (1) the court *sua sponte* dismissed his complaint, (2) the

court assessed "grossly disproportionate attorney fees," (3) the court was "impartial," * and (4) the clerk misfiled his Notice of Appeal.

### 1. Trial court.

a) Case pending—briefs due August 15, 1986.

### E. Albert Carter v. Murray Ritchel (86–M–1167)

An action to review a state court injunction imposed upon Carter until the disposition of a Colorado Supreme Court Notice To Show Cause concerning a petition filed by this office is discharged.

### 1. Trial court.

a) Case pending—Carter has filed with the court a lengthy list of all court cases in which he is involved.

### F. Al Carter v. Dorice Anders, et al., (85–K–1478).

An action against county social services employees initiated by Carter as an assignee of a claim of a third party. The county social service agency assisted a state court in adjudicating the custody rights of the third party's children. Carter alleged a conspiracy to deprive the third party of his constitutional rights and sought $3.3 million in actual and punitive damages.

### 1. District Court.

a) Action dismissed—The district court held, in part, "The complaint is clearly void on its face as claims for damages under the Civil Rights Act are not assignable."

### 2. Court of Appeals

a) Dismissal affirmed.

### G. Albert Carter v. Judge Carl O'Bue (85–M–2579).

An action by Carter against Federal District Court Judge O'Bue for defamation based upon Judge O'Bue's opinion in *Carter v. Telectron, supra.* Carter sued for $2 million in actual and punitive damages.

### 1. Trial court

a) Action dismissed—The court found that it was "clear" that Judge O'Bue was acting "pursuant to his duty as a United States District Judge...." and that there was "no doubt" that he was acting within his jurisdiction.

b) Judge O'Bue has requested sanctions against Carter which is now pending.

### 2. Court of appeals.

a) Appeal dismissed for lack of prosecution.

### H. Carter v. Attorney General of U.S. and United States (84–Z–1017).

An action commenced by Carter seeking an order invalidating his 1962 perjury conviction. Complaint also sought an order invalidating the *Carter v. Telectron* order. See also, *Carter v. United States*, (33–2–494).

### 1. Trial court.

a) Action dismissed—Carter had, in several previous actions, attempted to invalidate the 1962 conviction despite the fact the conviction was affirmed in *Carter v. United States*, 325 F.2d 697 (5th Cir.1963), *cert. denied*, 377 U.S. 946 (1964) and in *U.S. v. Carter*, 319 F.Supp. 702 (M.D.Ga. 1969), *aff'd* 437 F.2d 444 (5th Cir.1969) *cert. denied* 403 U.S. 920 (1971). Complaint dismissed because Carter failed to comply with *Carter v. Telectron.*

### 2. Court of appeals.

a) Dismissal affirmed—action dismissed for failure to comply with *Carter v. Telectron.*

### I. Carter v. W. Levesque, et al. (83–JM–704).

An action commenced by Carter against private parties alleging various torts were committed by the defendants.

### 1. Trial court.

a) Action dismissed—Carter failed to follow order in *Carter v. Telectron.*

### 2. Court of appeals.

a) Appeal pending.

### J. Carter v. United States (83–Z–494)

An action commenced by Carter which sought an order invalidating his 1962 perju-

---

* Footnote by the Court: The case summary should read that Mr. Carter claims the court was *not* impartial.

ry conviction. See also, *Carter v. Attorney General for United States* (84–Z–1017).

### 1. *Trial court.*

a) Action dismissed—The magistrate's recommendation of dismissal state, in part, "By the pleadings in this case, no new issue has been raised." Carter avoided dismissal on res judicata grounds by couching his complaint in context of a habeas corpus action to which res judicata does not apply.

### 2. *Court of appeals.*

a) Dismissal affirmed—court described Carter's claims as "without merit" and "meritless."

### K. *Carter v. Verne Orr* (83–JM–103).

An action commenced by Carter attacking the validity of his general discharge from the air force. This action was the latest in a series of cases filed by Carter challenging his discharge—see, e.g., *Carter v. United States*, 509 F.2d 1150, modified 518 F.2d 1199, *cert. denied* 377 U.S. 496 (1964) and *Carter v. Stetson*, 601 F.2d 733 (5th Cir.1977).

### 1. *Trial court.*

a) Action dismissed—the trial court dismissed the complaint, stating, "Finally, plaintiff's vexatious litigation tactics and his failures to comply with the order of the court in *Carter v. Telectron*, 452 F.Supp. 944 (S.D.Tex.1977) compel the conclusion that plaintiff ought not be allowed to pursue the instant action."

b) See, defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss for Summary Judgment and Appropriate Relief which provides an excellent summary of Carter's frivolous activities. Included as an exhibit to the motion is the trial court's certification in *Carter v. Stetson, supra*, that Carter's appeal "is not taken in good faith."

c) An action identical to this action was also filed by Carter in the district court for District of Columbia *Carter v. Orr*, 587 F.Supp. 436 (D.C.1984).

### 2. *Court of appeals.*

a) Dismissal affirmed—the appellate court agreed with trial court's conclusion that complaint was "vexatious."

3. Other frivolous actions—Carter recently filed a Motion for Relief from Judgment on June 30, 1986, over year after the Court of Appeals affirmed the dismissal. The trial court certified Carter's appeal of the denial of this motion as "not taken in good faith."

### L. *Carter v. Pafenberg, et al.* (82–JM–1329).

An action commenced by Carter, like other previous actions, attacking the validity of his general discharge.

### 1. *Trial Court.*

a) Action dismissed.

b) Trial court certifies that appeal "is not taken in good faith."

### 2. *Court of appeals.*

a) Appeal dismissed for lack of prosecution.

### M. *Carter v. Major General Lucious Theus* (79–K–630).

An action commenced by Carter to recover alleged salaries due from the air force.

### 1. *Trial court.*

a) Action dismissed—the defendants moved to dismiss the complaint because of Carter's abusive use of judicial system and lack of subject matter jurisdiction. The trial court granted the motion for reasons set forth in the motion.

### 2. *Court of appeals.*

a) Dismissal affirmed.

### N. *Carter v. Peter Bensinger* (78–W–1120).

The complaint involved an alleged assignment to Carter by a third party of a claim against the director of the DEA for an alleged unconstitutional seizure of property of the third party.

### 1. *Trial court.*

a) Action dismissed—the order of dismissal states in part, "This case is for all essential purposes a replay of *Carter v. Blumenthal*, 77–W–695, in this court."

### 2. *Court of appeals.*

a) Dismissal affirmed.

O. *Carter v. Blumenthal* (77–W–695).

See, *Carter v. Bensinger, supra,* for a description of the cause of action.

### 1. *Trial court.*

a) Action dismissed—the trial court found Carter failed to state a claim and that the court lacked subject matter jurisdiction.

### 2. *Court of appeals.*

a) Dismissal affirmed.

### 3. *United States Supreme Court.*

a) Certiorari denied.

P. *Carter v. Telectron and Consolidated Productions* (84–K–2202).

Case transferred from federal district court for Southern District of Texas

Q. *Carter v. Thomas Reed* (84–K–2203).

An action transferred from federal district court for Southern District of Texas which was commenced by Carter which attacks the validity of his general discharge from the air force.