[No. 20899. Department Two. May 29, 1928.]

Wilson A. Burdick, *Respondent,* v. B. J. Burdick *et al., Appellants.*[1]

[1] Actions (4)—Malicious Prosecution (15)—Frivolous Actions —Evidence—Sufficiency. Findings that an action was frivolous and with intent to coerce defendant, are sustained where it clearly appears that the matters had been litigated in a prior action, and the evidence to that effect was entirely undisputed.

[2] Injunction (14) — Subjects of Protection — Restraining Actions or Proceedings in Same Court. The court has power to perpetually enjoin a frivolous and coercive suit, seeking a conveyance of land, in the absence of any effort to show that it was brought in good faith, the court having repeatedly held in other litigation that the claim was without merit.

Appeal from a judgment of the superior court for Cowlitz county, Reynolds, J., entered May 13, 1927, upon findings in favor of the plaintiff, in an action for injunctive relief, tried to the court. Affirmed.

*W. H. Sibbald,* for appellants.
*Fisk & McCarthy,* for respondent.

Askren, J.—This is an appeal from a judgment perpetually enjoining the defendants from proceeding

[1]Reported in 267 Pac. 767.

with a certain action for claimed services rendered and board furnished to the plaintiff/by the defendants.

The facts follow: For many years prior to 1913, the plaintiff was the owner of a certain farm in Cowlitz county. In that year a son, B. J. Burdick, came on the farm and in conjunction with the father, plaintiff in this action, and another brother, Archie, conducted the farming operations. In 1925, the defendant B. J. Burdick left the farm and instituted an action against the father claiming that he had performed labor and services on the farm at the request of the father from March 11, 1913, until September 1, 1925, of the reasonable value of fifty dollars per month, none of which had been paid. He prayed for judgment in the sum of $8,675. A voluntary nonsuit without prejudice was taken after answer was filed denying the allegations of the complaint.

An action was then begun by the father for a writ of restitution, alleging that B. J. Burdick and Archie Burdick had been engaged with him as co-partners in farming on the land owned by him; that, in pursuance of said operations, B. J. Burdick and his wife occupied the farm house on the premises, but after withdrawing from the partnership had refused to surrender the same. By answer and cross-complaint to the action for restitution, B. J. Burdick and wife set up an agreement in the year 1913, whereby they were to come and live on the farm and receive therefor a deed to forty acres of land immediately and at a later date twenty acres more; that they had performed their agreement, had cleared a great deal of land, assisted in building and paid for a part of the house, planted an orchard, a berry patch; had a one-half interest in a silo on the premises, a one-third interest in the barn, and generally alleged a performance of the agreement. They also alleged that they had boarded the father

for a long time and demanded pay therefor at the rate
of twenty-five dollars per month, or $2,600 in all.
They prayed for judgment for the board furnished,
that the writ of restitution be denied, and for judg-
ment of the court requiring the father to deed to them
sixty acres of land. Subsequently the board bill was
waived, and the cause came on for trial before the
court and judgment was entered removing the defend-
ants from the premises and restoring them to the
father.

Another action was then brought by the defendant
B. J. Burdick against the brother Archie Burdick,
alleging a partnership in the operation of the farm in
question, and alleging that the brother Archie had
retained for his own benefit certain moneys received
from the partnership. The prayer was for an ac-
counting and the dissolution of the partnership.

Upon complaint by Archie that the father was a
necessary party to the partnership proceedings, he
was brought in and an amended complaint filed, alleg-
ing a partnership between B. J. Burdick and the father
entered into in 1913, whereby they were to share
equally the proceeds of the farm; a new agreement
entered into in the latter part of the same year, where-
by Archie was to become a member of the partner-
ship and the proceeds divided into three equal parts;
an agreement, three years later, by which the father
was to take certain beef, livestock and feed, and the
dairy part was to be operated by the two brothers on
an equal share basis; that the agreement continued
until June, 1925, during which time a large amount of
personal property was accumulated, and that B. J.
Burdick had, with the assistance of W. A. Burdick,
cleared eighteen acres of land of the reasonable value
of $1,800; had built a barn, two silos, a house and
fence. That he had boarded the father for a long

time for which the father had paid nothing except $425, promising to deed to the son forty acres of land or to remunerate him in some other manner. The prayer was for an accounting; that the court determine the respective rights of the parties to all the property described, and for further equitable relief.

At this trial also, the matter of board furnished the father was withdrawn from the case, upon the theory that it had nothing to do with the partnership business. The court entered its findings and judgment in this case and found that a partnership existed from 1913 to 1925, and determined that there was due B. J. Burdick $472.33. It found that during the partnership the farm was improved by clearing, constructing buildings, and an increased herd of stock, and held

". . . that the increased value of said farm by reason of such improvements and increased herd of cattle inured to the benefit of and belonged to the defendant W. A. Burdick alone, and did not enter into the partnership assets at any time."

The judgment was paid to B. J. Burdick.

Shortly thereafter, still another suit was brought by B. J. Burdick and wife against the father. In it they alleged that the father and mother had approached them with an offer to operate the farm in question jointly, and that, in return for their services, they were to receive a deed to forty acres of land; that they performed the terms of the agreement and built a house on the forty acres selected; that thereafter Archie Burdick came upon the premises under similar agreement; that, from time to time, the plaintiff requested a deed to the forty acres, which was delayed, and in 1915 the mother became ill and deeded her interest to the father, but that the forty acres were acknowledged to be in trust for the plaintiff. They alleged that the father refused to deliver the deed and

that they were damaged in the sum of $5,000, the value of the money spent and services performed on the farm. They also alleged that they had boarded the father for a long time, for which there was due $1,695. At the time this suit was instituted a letter was written by the attorney for B. J. Burdick to the father as follows: |

"Kelso, Washington, March 3, 1927.

"R. A. Burdick,

"Kelso, Washington.

"Dear Sir:

"I am handing to the sheriff at this time the pleadings in an action brot by your son, Burt, to secure what he believes to be his rights growing out of the farming operations of the past fifteen years.

"At the trial of the partnership action, the judge decided that you and Archie should pay the share of the crop, but also decided that any rights he might have account the failure to turn over to him any land or to compensate him for work on the land was something which you should pay for personally.

"We are accordingly bringing this action against you personally.

"We are claiming our work on the land and on the improvements thereon were of the value of five thousand dollars, this being, of course, to take care of our share of the cattle, etc. We are also suing for eight years board bill.

"It is not the desire of your son to make any trouble for you, or to get a judgment which will be ruinous. But if I am correctly informed, the land was turned over to you by your wife with the understanding that Burt should have the forty on which he put up the house.

"We do not wish to inconvenience you or put you to unnecessary expense in defending this claim, but feel that it is necessary to adjust matters. There is just one way for you to avoid these expenses and that is for you to deed to Burt the forty acres of land referred to, reserving to yourself a life interest therein. In that way you will never miss the land and Burt will

be assured of his share of the estate. You will, of course, be expected to pay the taxes on this forty as long as you use it. I understand Archie has a ten-year lease on this land. He would be required, under this settlement, to sign an agreement cancelling his lease at your death.

"We are not at all sure that we can prevail in this lawsuit. The writer has never seen a lawsuit which was a dead cinch. It is possible your experience with the last lawsuit would tend to give you the same opinion, as I am sure you did not expect a judgment against you. It is possible that this new case will terminate either way. It is therefore a good idea for all parties to avoid the expenses and troubles and grief incident to a lawsuit, especially when the parties are so closely related. This will be a jury case.

"I wish to say in closing that your son has no hard feeling toward you. You lived in his home for many years and his children grew very fond of their grandfather, and it is with the greatest regret that he takes this action against you. However, it is necessary to protect your own grandchildren from want in the future. I believe that, in this respect, you are as greatly interested in turning this land over as he is himself.

"I understand that the original intention regarding this land was that it should go to Burt and that it was your intention that he should have it by your will, and that, under these circumstances, you will be renewing the friendly and natural relations with your son and grandchildren and carrying out the wishes of his mother and avoiding the expenses and annoyances of an uncertain lawsuit.

"In the event you feel that you can arrange these matters will you kindly have your attorneys take the matter up with me and oblige,

"Yours very truly,"

The father then brought this suit, setting out all the previous suits between the parties, their results and the letter sent him at the time of the last action. He made B. J. Burdick and wife defendants as well

as their attorney W. H. Sibbald and his wife. He alleged that the allegations of the complaint were false and known to be so by the attorney when drawn; that he knew the title to the land had been adjudicated; knew that it had been determined that B. J. Burdick and wife had no interest in the cattle, stock or implements on the farm, and that the improvements made thereon were incidental to the partnership; that the letter sent by the attorney and the suit filed were done not to recover for the alleged claim of board, but for the purpose of intimidating and coercing by threats of litigation the father into conveying the forty acres of land mentioned in the complaint; that the suit for board was false and frivolous; that the action was not brought in good faith; that it was malicious and designed to accomplish an ulterior motive. These things were all denied by answer, and the case came on for hearing. An oral demurrer was interposed by the defendants, and the matter was heard by the same judge who decided the partnership action. The court held that all the matters alleged in the last suit had been determined by him in the previous partnership action, save and except the board claim, and decided to take testimony to determine whether such claim was brought in good faith. After hearing the evidence offered by the plaintiffs, and the defendants refusing to submit any contradictory evidence, the court entered its judgment perpetually enjoining the prosecution of the last suit filed by B. J. Burdick.

[1] Upon appeal, the appellants urged that, in the partnership action, the court did not decide the issue of whether B. J. Burdick was entitled to compensation for his labor in improving the farm, clearing, constructing buildings and like labor. In this, appellants are in error. We have already set out enough of the

judgment in that case to show that, in the partnership matter, the court found that such improvements inured to the father's benefit.

The court in this action, after calling attention to the fact that it presided at the trial of the partnership action, reminded counsel that, under the testimony in that case, the land

". . . . was improved, not with the idea of getting a compensation or a daily wage, or whatever you may call it, for the improvement of the land, but that the idea of getting the use of the land and the value of it in the use of the partnership, now that part of the question is—the complaint here well states that fact was formerly adjudicated in the case that was tried."

There can be no question but what the partnership action was *res adjudicata* of the first cause of action stated in the last complaint filed by B. J. Burdick. Nor can little dispute arise over the fact that the evidence offered by the father and his witnesses, being entirely undisputed, was sufficient to show that the claim for board was false and frivolous, and that the whole action was intended to coerce the father into deeding the forty acres of land to the son.

[2] The really important question in this case is, whether the court should have issued its injunction to stay the suit or should have left the matters there alleged to be determined in the regular way by a plea of *res adjudicata* to the first cause of action and a defense to the second.

It must be admitted that the power of injunction to stay a pending law suit should be, and it is to the credit of the courts that it is, sparingly used. Yet it is a vital right to those sought to be brought before the court, and one which, in a proper case, should not be denied because of its frugal use. The rule is well stated in 32 C. J., p. 94:

"Vexatious suits—General. While there is some authority to the contrary, it is generally held that equity has jurisdiction to enjoin vexatious suits, not brought in good faith and instituted for annoyance or oppression or to cause unnecessary litigation. And this is so whether the litigation complained of is numerous actions between the same parties or numerous actions brought by many against one. Nevertheless actions are not necessarily vexatious because they are numerous. A very clear case must be made out to authorize a court of equity to enjoin suits on the grounds that they are vexatious and oppressive. One may not be enjoined from protecting and enforcing his rights by lawful means, unless his acts to that effect are done or threatened unnecessarily, not really for the purpose of protecting his rights, but maliciously to vex, annoy, and injure another."

If appellant had made any showing whatever indicating that the claim for board was a *bona fide* suit, that it possessed even little merit, and that the court was resorted to in good faith, we should not hesitate to hold that such a matter must be tried out in the suit brought for that purpose. But the history of the litigation between father and son, coupled with the letter and the uncontradicted evidence offered in this equitable action, can lead but to one view, and that is that the court correctly enjoined a suit brought purely for vexatious purposes in an endeavor to compel a litigant to do that which the court had repeatedly held he was not required to do.

The judgment is affirmed.

Fullerton, C. J., Holcomb, and Main, JJ., concur.