[Nos. 20905–1–I; 22347–0–I;   Division One.        February 26, 1990.]
        23611–3–I.

*In the Matter of the Marriage of* MARJORIE A. GIORDANO, *Appellant, and* JOSEPH S. GIORDANO, *Respondent.*

*Neal T. Feinerman,* for appellant.

*Mark D. Olson,* for respondent.

WEBSTER, J.—Marjorie A. Giordano appeals numerous postdissolution orders. Among other claimed errors, she contends her right of access to the courts and to federal administrative remedies was violated by a moratorium on motions and a restraining order.

## FACTS

Ms. Giordano petitioned for dissolution on August 23, 1984. She and Mr. Giordano reached a settlement agreement which was read into the record and incorporated into an amended decree. Ms. Giordano appealed the amended decree because she felt it did not reflect the parties' agreement. She signed an agreed order modifying the amended decree and dismissing the appeal on December 23, 1985.

Ms. Giordano filed numerous motions to enforce the agreed order and to modify it. The number of motions threatened to preempt the family law motions calendar and to involve all 39 superior court judges (court's comment). As a result, the case was specially assigned to a single judge for disposition in civil track I.

The court issued restraining orders "to take control of the case and the behavior of the parties, and to stop the expenditure of attorney fees". One order restrained Ms. Giordano from contacting any public or private agency if the effect was to involve Mr. Giordano or "to stir up any more trouble." The court also issued a written moratorium on motions barring motions until trial on a separate issue, at which time trial would be conducted "on all issues brought to the attention of the Court". The moratorium did not apply in case of harassment, emergency, or delinquency in support payments exceeding 1 month.

The moratorium lasted 4 months. During its pendency, Ms. Giordano filed 12 motions. She obtained a wage

assignment, a discovery order, and an order granting extensive relief pursuant to her motions. She obtained a continuance of the trial date for personal reasons.

At trial, Ms. Giordano, acting pro se, said she had five motions. She first sought vacation of the amended decree, as modified by the agreed order, on the ground that it did not comport with the original agreement as read into the record. The court denied this motion as being untimely. The second motion sought the attendance of two witnesses who "may" have had information on a possible diversion of assets. The court denied this motion after determining that the proposed witnesses did not have information that was not already available. The third motion was really an "objection" to Mr. Giordano's financial statement. The court said this could be cured by cross examination. The fourth motion sought clarification of issues before the court and of a ruling regarding representation as a pro se litigant. The court denied this motion because the clarification sought was apparently an attempt to relitigate old issues already resolved by the agreed order, and the ruling regarding representation, which the court read in the record, was clear. Ms. Giordano either waived her last motion or the court, exasperated at this point, refused to hear it.

After trial, the court found both parties had been unduly litigious and that Ms. Giordano had been "extremely aggressive." A subsequent order contained findings that Mr. Giordano had been "stubborn and intractable", and that Ms. Giordano had "burdened" the court with "excess verbiage, diatribes and petty claims". The court noted an unprecedented 13 volumes of files had accumulated because of this respective misconduct. Accordingly, the court imposed a $500 sanction against each party.

## ACCESS TO COURTS

Ms. Giordano contends she was denied her right of access to the courts by the moratorium on motions. She does not indicate how she was prejudiced, and no prejudice is

apparent from a review of the record. We could affirm on this ground, but we do so on the merits.

■ "[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971). The opportunity required depends on "the nature of the case" and "the limits of practicability". *Boddie*, at 378, 379, quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 318, 94 L. Ed. 865, 70 S. Ct. 652 (1950). *Boddie* held that indigent persons unable to pay the filing fee to obtain a divorce are entitled to waiver of the fee. However, when access to the courts is not essential to advance a fundamental right, such as the freedom of association or disassociation involved in *Boddie*, access may be regulated if the regulation rationally serves a legitimate end. *See United States v. Kras*, 409 U.S. 434, 34 L. Ed. 2d 626, 93 S. Ct. 631 (1973) (indigents not entitled to waiver of bankruptcy filing fee); *Ortwein v. Schwab*, 410 U.S. 656, 35 L. Ed. 2d 572, 93 S. Ct. 1172 (1973) (no right to waiver of appellate filing fee to challenge denial of welfare benefits).

In other words, "[t]here is no absolute and unlimited constitutional right of access to courts. All that is required is a reasonable right of access—a reasonable opportunity to be heard." *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 554 (3d Cir. 1985). Statutes of limitation and repose are a classic example. *See United States v. Kubrick*, 444 U.S. 111, 117, 62 L. Ed. 2d 259, 100 S. Ct. 352 (1979). The requirement that litigation proceed in good faith and comply with court rules has always been implicit in the right of access to the courts. *See People v. Carter*, 678 F. Supp. 1484, 1486 (D. Colo. 1986). Otherwise, a person could barge into court and demand a hearing at the expense of others who have an equal or greater right of access depending on the merits and nature of their claims. If access is to

be guaranteed to all, it must be limited as to those who abuse it. *Carter.*

Cases such as *Carter,* dealing with pro se access, are illustrative. *See also Lysiak v. Commissioner,* 816 F.2d 311 (7th Cir. 1987); *Di Silvestro v. United States,* 767 F.2d 30 (2d Cir. 1985); *Brown v. Gibson,* 571 F. Supp. 1075 (W.D. Mo. 1983). They stand for the proposition that a court may, in its discretion, place reasonable restrictions on any litigant who abuses the judicial process.[1] Our Legislature has made the same judgment: "Every court of justice has power . . . [t]o provide for the orderly conduct of proceedings before it or its officers". RCW 2.28.010(3). Court rules have the same end: "to secure the just, speedy, and inexpensive determination of every action." CR 1. We hold the trial court did not abuse its discretion in issuing the moratorium on motions to ensure that Ms. Giordano did not waste additional judicial resources. The moratorium did not amount to a total denial of access. *Cf. Whitney v. Buckner,* 107 Wn.2d 861, 869, 734 P.2d 485 (1987) (citing *Bounds v. Smith,* 430 U.S. 817, 825, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977)). Rather, it delayed hearing for an efficient resolution of issues, and provided a safety valve for emergencies, including delinquent support.

RESTRAINT AGAINST FEDERAL ADMINISTRATIVE REMEDIES

■ Our decision to uphold the moratorium on motions to prevent further abuse of process does not extend to the restraint against federal administrative remedies. Under the supremacy clause, U.S. Const. art. 6,[2] state courts are

---

[1]*Carter,* in particular, provides compelling authority for injunctive relief against vexatious pro se litigation, though this court previously found no authority for such relief. *See Bramall v. Wales,* 29 Wn. App. 390, 394–95, 628 P.2d 511 (1981). We do not consider *Bramall* controlling. *See Whatcom Cy. v. Kane,* 31 Wn. App. 250, 640 P.2d 1075 (1981) (citing *Burdick v. Burdick,* 148 Wash. 15, 267 P. 767 (1928)); *see also Northern Pac. Ry. v. Richey & Gilbert Co.,* 132 Wash. 526, 527, 232 P. 355 (1925) (citing *Rader v. Stubblefield,* 43 Wash. 334, 86 P. 560 (1906) (enjoining prosecution of action in another state)).

[2]U.S. Const. art. 6 provides in pertinent part: "This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be

without power to enjoin litigants from filing federal actions. *See General Atomic Co. v. Felter,* 434 U.S. 12, 54 L. Ed. 2d 199, 98 S. Ct. 76 (1977) (applying rule of *Donovan v. Dallas,* 377 U.S. 408, 12 L. Ed. 2d 409, 84 S. Ct. 1579 (1964)). "Federal courts are fully capable of preventing their misuse for purposes of harassment." *General Atomic,* at 19. *Donovan* was "premised on the fact that the right to litigate in federal court is granted by Congress and, consequently, 'cannot be taken away by the State.'" *General Atomic,* at 16 (quoting *Donovan,* at 413). The right to pursue federal administrative remedies is also granted by Congress, and, therefore, is similarly protected.

We affirm the orders from which Ms. Giordano appeals. We vacate the restraining order only insofar as it may limit Ms. Giordano from pursuing federal remedies.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

PEKELIS, J., and DEIERLEIN, J. Pro Tem., concur.

Reconsideration denied April 9, 1990.

---

the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."