IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARLO COYLE, on behalf of B.J.C., | ) | |
| | ) | No. 32418-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIMSHA ASIA GOINS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, J. — We address the superior court's authority to enter sanctions against a vexatious litigator. Marlo Coyle sought a sexual assault protection order against a Department of Social and Health Service (DSHS) case worker who evaluated a child in need of services (CHINS) petition of Coyle's son. The trial court denied Coyle's request for a protection order and declared her a vexatious litigant. In addition to appealing this declaration, Marlo Coyle assigns error to the trial court's admission, as exhibits, of previous protection petitions filed by Coyle, the trial court's refusal to require her son to testify, and the trial court's construction of RCW 7.90.010(4)(d), the sexual assault protection act. We affirm the superior court.

FACTS

Appellant Marlo Coyle is the mother of B.J.C., sixteen years old in July 2013. By that month, B.J.C. had been the subject of four child dependency actions. During July 2013, B.J.C. fled home. He then filed a child in need of services (CHINS) petition, alleging neglect and abuse by his mother. B.J.C. claimed that his mother hit him, pulled his hair, and threatened to shoot him and others. According to B.J.C., his mother called him derogatory names and referred to him as "an ungratefull [sic] piece of shit like [his] dad." Clerk's Papers (CP) at 28. In response to the petition, Coyle denied striking B.J.C., except "smacking" him once to gain his attention. Upon the granting of a CHINS petition, the DSHS may place a child in a crisis residential center, foster family home, licensed group home facility, or any other suitable residence.

DSHS Division of Children and Family Services (DCFS) assigned social worker and respondent, Nimsha Asia Goins (Asia Goins) to assist with B.J.C.'s CHINS petition. As was standard practice, Goins completed a family assessment, helped B.J.C. find a placement home, and referred B.J.C. for mental health counseling. Goins recommended to the trial court that B.J.C.'s petition be granted and the trial court concurred.

At the time B.J.C. entered a placement home, he saw a therapist at Spokane Mental Health, but B.J.C. told Goins he wanted a new therapist. Goins referred B.J.C. to Lutheran Social Services and Spokane Therapist. B.J.C. decided to see Jeff Wirth at Spokane Therapist. Goins had recently begun his own private counseling practice with

2

Spokane Therapist, but he insists he did not benefit financially from referring B.J.C. to Spokane Therapist.

After B.J.C. filed his CHINS petition, his mother, Marlo Coyle, filed an At-Risk-Youth (ARY) petition alleging that B.J.C. abused drugs and alcohol, exhibited anger problems, and engaged in assaultive and aggressive behavior. In the petition, Coyle alleged that B.J.C. assaulted her, her husband, and B.J.C.'s brother. Granting of an ARY petition by the juvenile court allows the parent to obtain assistance and support from the court in maintaining the care, custody and control of the child and to assist in the resolution of family conflict. We do not know if a court granted Marlo Coyle's ARY petition. B.J.C.'s CHINS placement lasted about seven months.

On November 20, 2013, Marlo Coyle started a Facebook Page titled: "The Fight For [B.]—An End to A Corrupt System," in which she chronicled her "battle" with DCFS and posted photos of Jeff Wirth and Asia Goins. CP at 61. In one posting on the Facebook site, Coyle alleged that Goins engaged in sexual conduct with her son. On December 2, 2013, Marlo Coyle filed a complaint with the State of Washington Office of the Family and Children's Ombuds. She alleged that Asia Goins engaged in unprofessional conduct when he referred B.J.C. to Spokane Therapist.

On December 13, 2013, the trial court's court commissioner, in the CHINS petition suit, found Marlo Coyle in contempt for willful violation of an order prohibiting

3

her from having contact with B.J.C.'s placement custodians absent a true emergency. The court commissioner also stated in its order:

> The court is close to ordering that [Coyle] is deemed a vexatious litigant. The mother cannot file any additional motions (including any petition) until she has provided proof from her medical [doctor] that she is unable to take [mental] health medications based upon her medical condition.

CP at 25. The "medical condition" referred to by the court was a heart condition. Report of Proceedings (RP) at 46. After a CHINS hearing, Marlo Coyle stated in the courthouse hall that she would file a complaint against the court commissioner, and she yelled that Asia Goins was a child molester.

On January 10, 2014, Asia Goins resigned from DCFS. Goins' DCFS supervisor then informed him: "Had you not resigned, the current investigation against you would have continued and if allegations were substantiated, I would have sought to impose appropriate discipline." CP at 34. On February 13, 2014, the family and children's ombudsman informed Marlo Coyle that it substantiated her complaint and found that Asia Goins engaged in unprofessional conduct when referring B.J.C. to Spokane Therapist. On February 26, 2014, B.J.C. dismissed his CHINS petition and returned to Coyle's home.

PROCEDURE

On March 5, 2014, Marlo Coyle filed, on behalf of B.J.C., a petition for a sexual assault protection order against Asia Goins. The trial court's order denying this petition is the order on review before this appeals court.

In her petition for a protection order, Marlo Coyle asserted four principal allegations of sexual misconduct toward her son by Asia Goins. First, during the CHINS petition, Goins followed B.J.C. into the bathroom at the courthouse, poked his head over the stall in which B.J.C. stood, and asked to see B.J.C.'s penis. Second, Goins appeared at one of B.J.C.'s urology appointments and refused to leave until asked by B.J.C. in the presence of a doctor. Third, Goins approached B.J.C. at a coffee shop and asked if he "would be interested in getting 'into things w/another man.'" CP at 3-4. Goins informed B.J.C. that this contact would be experimental, rather than homosexual in nature. B.J.C. replied that he liked girls. Fourth, on one occasion, Goins caressed B.J.C.'s face and the back of his head, and, on another occasion, Goins kissed B.J.C.'s forehead. As part of the petition, Coyle declared that B.J.C. feared for his safety and dreaded seeing a psychologist because of Goins' actions. Coyle also averred: "I fear because of the corruption in this case I will be retaliated against harassed & am in fear of what this man is capable of." CP at 4. In addition to filing the petition, Marlo Coyle reported Asia Goins to the police.

On March 5, 2014, the trial court granted a temporary sexual assault protection

5

order and scheduled a hearing for a permanent protection order on March 18, 2014. The order named B.J.C. as the protected party and appointed Coyle as B.J.C.'s guardian ad litem for the proceeding. On March 14, 2014, Asia Goins filed a declaration in response to Coyle's petition. Goins denied all allegations against him and attacked Coyle's credibility based on her litigious past. Goins filed several exhibits showing that Coyle, under her current name and pseudonyms, Marlo Bailey and Marlo Colten, filed, since 1996, twenty-one petitions for anti-harassment or sexual assault protection orders. Most of the prior petitions alleged sexual misconduct by various respondents.

On March 18, 2014, the trial court conducted a hearing on Marlo Coyle's petition for a permanent sexual assault protection order against Asia Goins. Coyle objected to the timing of the filing of Asia Goins' declaration and requested a continuance. In the alternative, Coyle asked that the court strike the declaration as untimely. The trial court denied Coyle's requests by noting that a party responding to a protection order proceeding need not abide by a rigid deadline and may provide evidence the day of a hearing without providing prior notice to the petitioner. Goins moved the court to dismiss Coyle's petition on the ground that the allegations, even if true, did not support relief under Washington's sexual assault protection order act. The trial court denied Goins' motion.

During the March 18 hearing, Marlo Coyle, acting as B.J.C.'s guardian ad litem, argued that the court should issue a sexual assault protection order because Asia Goins

6

"groomed" B.J.C. Coyle claimed that Goins had no reason to attend B.J.C.'s urology appointment, that Goins attempted to isolate B.J.C. by helping him change counselors, and that B.J.C. told her he fears being killed or kidnapped by Goins.

During the petition hearing, Marlo Coyle repeatedly entreated the trial court to allow B.J.C. to testify or to speak with B.J.C. in chambers. The trial court denied the request. During the hearing, the trial court repeatedly inquired of Coyle whether B.J.C. would confirm the statements uttered by Coyle concerning the conduct of Asia Goins, for which she brought the petition. Coyle confirmed that B.J.C. would so testify.

During the March 18 hearing, Asia Goins stated that he last interfaced with B.J.C. in November 2013. Goins emphasized Coyle's history of filing similar petitions for protection orders against people with whom she had conflict. Goins accentuated the December 13 contempt order prohibiting Coyle from filing any additional motions in the CHINS proceeding until she verified with her physician that her heart condition prevented her from ingesting mental health medications. Goins requested that the trial court review, in advance, any future motions or petitions Coyle wished to file.

During the March 18 hearing, the astute trial court allowed Marlo Coyle liberty to speak about her concerns. Instead of focusing on alleged misconduct of Asia Goins, Coyle extensively complained about DSHS and its handling of B.J.C.'s CHINS petition. Coyle promoted herself as a good parent and functioning member of the Spokane community. Coyle faulted DSHS and the juvenile court system for granting her son's

7

No. 32418-4-III
*Coyle v. Goins*

CHINS petition. According to Coyle, she disciplined B.J.C. for drinking alcohol. In response, her son filed the petition to avoid the consequences of his behavior, and the government believed his untruths that she abused and neglected him.

The trial court denied Marlo Coyle's petition against Asia Goins for a sexual assault protection order. The trial court explained:

> There's no basis whatsoever here for the Court to grant the request that Ms. Coyle has presented to the Court. There's clearly been no sexual touching of the child by Mr. Goins whatsoever. There's no—there's been no touching of his private bodily parts, either under his clothing or outside of his clothing. It's not even alleged in the declaration that was filed in any way.
> As best as I can tell from the pleadings that were filed, and that's what I have to base my conclusion on, there's really been no inappropriate touching at all, except a suggestion that perhaps Mr. Goins caressed the child or an allegation which he vehemently denies that he kissed the child in some fashion. Frankly, the request for a sexual assault protection order is completely nonmeritorious, and it doesn't comply with the statute in any way.

RP at 71. The trial court identified an agenda of Marlo Coyle against anyone who has the audacity to disagree with her. The trial court remarked:

> [T]here is just no question in my mind today that the action that's been filed by Ms. Coyle in terms of this request for a sexual assault protection order was filed by her as a retaliatory action.

RP at 76.

The trial court declared Marlo Coyle a vexatious litigator and prohibited her from filing any pleadings, during the next two years, in any Spokane County court without permission of the court. The trial court reviewed attachments to Asia Goins' declaration

8

that listed the other twenty-one petitions filed by Coyle and included some of the pleadings in the other petition proceedings. In its ruling, the trial court mentioned the other petitions. Nevertheless, the court found the petition against Asia Goins by itself vexatious since Coyle filed the petition to retaliate against Goins because of his work as a DCFS case manager in B.J.C.'s CHINS proceeding. The trial court also restrained Coyle from harassing, intimidating, retaliating against, or disturbing the peace of Asia Goins or contacting him. The trial court imposed CR 11 sanctions on Coyle in the amount of $1,200 to cover Asia Goins' attorney fees.

## LAW AND ANALYSIS

*Issue 1: Whether the trial court erred by admitting evidence of Marlo Coyle's previous petitions for protection orders?*

*Answer 1: No.*

Marlo Coyle first contends that the trial court erred in admitting evidence of her multiple past attempts to obtain protection orders against other individuals. Asia Goins attached the orders and related documentation to his responsive pleadings. We note that the trial court did not expressly admit the orders as exhibits. Nevertheless, Goins mentioned the orders during the hearing argument, and the trial court reviewed the orders. The trial court referenced Marlo Coyle's other litigation during its ruling. Therefore, we proceed as if the trial court formally admitted the prior petitions as evidence.

9

Marlo Coyle argues that the statute governing sexual assault protection orders prohibits a court from considering the prior sexual activity or the reputation of the petitioner. She maintains that her filing other petitions is irrelevant to the question of whether Asia Goins inappropriately sexually groomed B.J.C. Asia Goins contends that B.J.C. was the petitioner, not Coyle, and therefore the statute provides Coyle no protection from evidence of her reputation as a potentially vexatious litigant.

In 2006, the Washington legislature adopted the sexual assault protection order act. The legislature recognized sexual assault as a heinous crime that goes underreported. RCW 7.90.005. The legislature desired a mechanism for victims to obtain an order of protection against the perpetrator in instances when the prosecutor declines charges. RCW 7.90.005. The state legislature noted that often times the victim does not qualify for a domestic violence protection order, because the perpetrator is not a relative. RCW 7.90.005. The act allows a minor child between the ages of sixteen and eighteen years old to file a petition on his or her own. RCW 7.90.040(2). However, a person may file a petition on behalf of any minor child alleging a need for protection from the conduct covered by the act. RCW 7.90.030(1)(b)(i). No reported decisions address the act.

RCW 7.90.080, a section of the sexual assault protection order act, controls Marlo Coyle's first assignment of error. The statute provides, in relevant part:

> (1) In proceedings for a sexual assault protection order . . . the *prior sexual activity or the reputation of the petitioner* is inadmissible except:

10

(a) As evidence concerning the past sexual conduct of the petitioner with the respondent when this evidence is offered by the respondent upon the issue of whether the *petitioner consented* to the sexual conduct with respect to which the offense is alleged.

(Emphasis added.) This statute echoes, in part, Washington's rape shield statute, RCW 9A.44.020(2), which prohibits evidence of the alleged rape victim's sexual history or reputation. The latter statute reads, in pertinent part:

2) Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent. . . .

We conclude that the evidentiary bar of RCW 7.90.080 does not apply for three reasons. First, assuming RCW 7.90.080 applies to a parent suing on behalf of a child, Asia Goins did not submit evidence of Marlo Coyle's prior sexual activity or reputation. Second, the petitioner sought to be protected by the sexual assault protection order act shield statute is the victim, not the parent filing the petition on behalf of the victim. Third, although the evidence of Coyle's other petitions was irrelevant to whether Asia Goins engaged in sexual misconduct, the evidence was relevant to Goins' request for sanctions and restraints on further petitions because of Coyle's history of vexatious litigation.

We note that Asia Goins did not provide evidence of Coyle's sexual activity or reputation, but rather submitted evidence of prior petitions filed by Coyle against others.

11

RCW 7.90.080 excludes evidence of "the prior sexual activity or the reputation of the petitioner." The "reputation," to which the statute refers, would be the victim's reputation for unchastity or promiscuity. None of the evidence submitted by Asia Goins qualifies for this exclusion.

RCW 7.90.010(2), the definition section of the sexual assault protection order act, defines "petitioner" as "any named petitioner for the sexual assault protection order *or* any named victim of nonconsensual sexual conduct or nonconsensual sexual penetration on whose behalf the petition is brought." (Emphasis added.) This definition is in the disjunctive and distinguishes between a petitioner who is a victim and any other named petitioner. Thus, the definition should encompass a parent who files the petition on behalf of her child at least for most purposes.

RCW 7.90.080 contains tempering language as to who qualifies as a "petitioner" for purposes of the evidentiary shield. The statute again reads:

> (1) In proceedings for a sexual assault protection order . . . the *prior sexual activity or the reputation of the petitioner* is inadmissible except:
> (a) As evidence concerning the *past sexual conduct of the petitioner* with the respondent when this evidence is offered by the respondent upon the issue of whether the *petitioner consented* to the sexual conduct with respect to which the offense is alleged.

The additional language in subsection (a) of RCW 7.90.080(1) establishes a purpose of protecting the victim of the sexual assault, not a parent who files the petition. Statutory language is to be interpreted in context, considering related provisions, and the statutory

12

scheme as a whole. *In re Marriage of Chandola*, 180 Wn.2d 632, 648, 327 P.3d 644 (2014); *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). We interpret statutes so as to advance the legislative purpose. *State v. Walls*, 106 Wn. App. 792, 795, 25 P.3d 1052 (2001). Thus, we hold that RCW 7.90.080 provides no protection for a parent filing a petition on behalf of a child. We note, however, that evidence of the parent's sexual history or reputation may otherwise rarely be admitted on grounds of relevance. But, again, Asia Goins did not introduce evidence of Marlo Coyle's sexual history or reputation.

The trial court ruled that Asia Goins did not engage in sexual misconduct defined by the sexual assault protection order act. In so ruling, the trial court did not rely on evidence of Marlo Coyle's other petitions for protection. The trial court held that Coyle's evidence, even if accepted as true, fell short of sexual touching. The trial court relied on evidence of other petitions for protection only when ruling that Coyle engaged in vexatious litigation.

Evidence irrelevant for one purpose may be relevant for another purpose. *In re Det. of West*, 171 Wn.2d 383, 398, 256 P.3d 302 (2011). Equity affords a remedy by way of an injunction against suits which are vexatious and oppressive. *Bodeneck v. Cater's Motor Freight System, Inc.*, 198 Wash. 21, 30, 86 P.2d 766 (1939); *Burdick v. Burdick*, 148 Wash. 15, 23, 267 P. 767 (1928). Courts recognize the need for preapproval of a litigious party's filing of new lawsuits because of the party's long history of filing suits.

13

No. 32418-4-III
*Coyle v. Goins*

*Safir v. United States Lines Inc.*, 792 F.2d 19, 23-24 (2d Cir. 1986); *Kissi v. United States Dep't of Justice*, 793 F. Supp. 2d 233, 234 n.1 (D.D.C. 2011); *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 138-39 (S.D.N.Y. 2005); *Am. Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.*, 52 S.W.3d 337, 340 (Tex. App. 2001). In order to enter such an order, the court must know about prior suits, thereby making evidence of the earlier suits relevant.

Marlo Coyle broadly asserts that RCW 7.90.080 specifically prohibits judges from considering inappropriate or irrelevant evidence. We agree that the trial court should not permit inappropriate or irrelevant evidence, but disagree that RCW 7.90.080 supports such a prohibition. Other rules prohibit introduction and use of inappropriate or irrelevant evidence. Nevertheless, Coyle does not identify evidence, other than her prior petitions, that the trial court should have ignored, nor does she cite any rule of evidence or case law supporting inadmissibility of other evidence.

*Issue 2: Whether the trial court erred in not allowing B.J.C. to testify?*

*Answer 2: No.*

Marlo Coyle next contends that the trial court erred by refusing to hear testimony from B.J.C. regarding the allegations in the petition his mother prepared. Coyle argues that, because B.J.C., at age sixteen, could have filed the petition on his own, the legislature must have intended that a sixteen year old attend the protection order hearing and present his side of the facts.

RCW 7.90.040(2) provides: "A person under eighteen years of age who is sixteen

14

years of age or older may seek relief under this chapter and is not required to seek relief by a guardian or next friend." Although B.J.C. was sixteen years old at the filing of this petition and could have filed the petition on his own, Marlo Coyle filed on his behalf. In turn, the trial court appointed Coyle to act as B.J.C.'s guardian ad litem in this proceeding as authorized by RCW 7.90.040(4). As B.J.C.'s temporary guardian ad litem, Coyle had the responsibility to represent B.J.C.'s best interests, maintain independence and professionalism, and appear at the hearing on his behalf. GALR 1, 2(a), 2(b), 2(c), and 4(e).

Marlo Coyle identifies no statute, law, or rule that requires a court to allow a guardian ad litem to call the minor party she represents to testify. RCW 7.90.040(2) imposes no duty on a court to question a minor in a proceeding for a protection order under the statute. The opposite is also true. No statute, law, or rule authorizes the trial court to exclude, from testifying, a sixteen year old alleged victim. Nevertheless, under RCW 2.28.010, "[e]very court of justice has power . . . [t]o provide for the orderly conduct of proceedings before it or its officers." The trial court holds broad discretion in controlling its courtroom, including the examination of witnesses. *State v. Dye*, 170 Wn. App. 340, 344, 283 P.3d 1130 (2012), *aff'd*, 178 Wn.2d 541, 309 P.3d 1192 (2013).

Whereas a trial court should be reluctant to limit witnesses with relevant knowledge to the claims in litigation, Marlo Coyle informed the trial court that, if B.J.C. testified, he would confirm her allegations. She never stated that B.J.C. would describe

15

additional details beyond her allegations in order to supply proof of sexual conduct under the sexual assault protection order act. Thus, we hold the trial court did not abuse his discretion in denying testimony from B.J.C. The trial court may have entertained B.J.C.'s best interests by excluding him from testifying.

*Issue 3: Whether the trial court misapplied RCW 7.90.010(4)(d) in determining whether the acts asserted by Marlo Coyle constituted nonconsensual sexual conduct?*

*Answer 3: No.*

Marlo Coyle argues that the trial court erred in ruling that the alleged acts contained within B.J.C.'s petition for a protection order did not constitute nonconsensual sexual conduct as defined by RCW 7.90.010. Coyle argues that the trial court only considered whether Asia Goins assaulted or touched B.J.C. and did not consider whether Goins engaged in other "sexual conduct" that would warrant a sexual assault protection order. In particular, she maintains Goins' request to see B.J.C.'s genitals meets the statutory definition of "sexual conduct." Goins contends that this allegation, even if accepted as true, does not qualify under the statute's definition of sexual conduct. We agree with Goins.

Under the sexual assault protection order act, a party must show the "existence of nonconsensual sexual conduct or nonconsensual sexual penetration." RCW 7.90.020(1). The petitioner holds the burden of proving the need for the order by a preponderance of the evidence. RCW 7.90.090(4). The act defines "sexual conduct" in pertinent part as:

16

(a) Any intentional or knowing touching or fondling of the genitals, anus, or breasts, directly or indirectly, including through clothing;

(b) Any intentional or knowing display of the genitals, anus, or breasts for the purposes of arousal or sexual gratification of the respondent;

(c) Any intentional or knowing touching or fondling of the genitals, anus, or breasts, directly or indirectly, including through clothing, that the petitioner is forced to perform by another person or the respondent;

*(d) Any forced display of the petitioner's genitals, anus, or breasts for the purposes of arousal or sexual gratification of the respondent or others . . .*

RCW 7.90.010(4) (emphasis added).

Marlo Coyle argues that the courtroom bathroom incident alleged in her petition qualifies as "sexual conduct" because Asia Goins stood in a position of authority in a place of authority, the courthouse. Still there remains no evidence that the incident, if presumed to be true, meets the statutory definition of sexual conduct. Coyle does not allege that B.J.C. displayed his genitals to Goins. Coyle claimed other incidents of Goins touching and kissing B.J.C., but the statute covers only touching of genitals, the anus or breasts.

*Issue 4: Whether the trial court erred in declaring Marlo Coyle a vexatious litigant and controlling her ability to seek protection orders for two years?*

*Answer 4: No.*

Marlo Coyle last contends that the trial court erred in finding her a vexatious litigant and requiring her to seek the court's approval before bringing any future motions or petitions before the court. She argues that her bringing the petition on B.J.C.'s behalf

17

does not make her a vexatious litigant because there was corroboration for her story. By asserting this argument, Coyle may confuse frivolous litigation with vexatious litigation. The trial court did not find her lawsuit to be frivolous.

Although a lawsuit may be both frivolous and vexatious, frivolous litigation emphasizes the lack of merits in a suit, whereas vexatious litigation underlines the retaliatory nature of the litigation. Although there is undoubtedly an overlap in the meaning of the two words, the term "vexatious" embraces the distinct concept of being brought for the purpose of irritating, annoying, or tormenting the opposing party. *United States v. Heavrin*, 330 F.3d 723, 729 (6th Cir. 2003). The word "frivolous" connotes filing a lawsuit, without bad faith or a wrong motive, but which lacks foundation or a basis for belief that it might prevail. *United States v. Heavrin*, 330 F.3d at 729 (6th Cir. 2003).

Washington's civil rules exist "to secure the just, speedy, and inexpensive determination of every action." CR 1. Likewise, RCW 2.28.010(3) provides: "Every court of justice has power. . . . To provide for the orderly conduct of proceedings before it or its officers." In furtherance of these aims, our supreme court has long recognized that a court may equitably enjoin a party from bringing litigation that the court has found to be vexatious or oppressive. *Bodeneck v. Cater's Motor Freight Sys. Inc.*, 198 Wash. at 30 (1939); *Burdick v. Burdick*, 148 Wash. at 23 (1928). A person possesses no absolute and unlimited constitutional right of access to courts. A person only possesses a

18

reasonable right of access or a reasonable opportunity to be heard. *In re Marriage of Giordano*, 57 Wn. App. 74, 77, 787 P.2d 51 (1990). We review a trial court's order limiting a party's access to the court for an abuse of discretion. *Bay v. Jensen*, 147 Wn. App. 641, 657, 196 P.3d 753 (2008).

*Marriage of Giordano*, 57 Wn. App. 74 is illustrative. After negotiating a settlement agreement, incorporated by reference into the final divorce decree, Marjorie Giordano filed multiple motions to enforce or amend the final decree, potentially involving all thirty nine of King County's superior court judges. The trial court issued multiple restraining orders, including a moratorium on all motions until trial on a separate issue in the case. The moratorium lasted four months, during which time Giordano filed twelve additional motions. Finally back at trial, a pro se Giordano presented five more motions. The "exasperated" trial court found Giordano "unduly litigious" and "extremely aggressive" and sanctioned her $500. Giordano argued on appeal that the trial court denied her access to the courts by the four-month moratorium. While this court could have affirmed on the grounds that Giordano could point to no prejudice that she suffered as a result of the moratorium, we chose to address the merits of the case. We noted the right of access to the courts assumed that litigation would proceed in good faith and comply with court rules. We upheld the trial court's moratorium on the ground that it did not completely deny Giordano access to the courts, but rather delayed hearing for an efficient resolution of issues.

Ample evidence supported our trial court's conclusion that Marlo Coyle engaged in vexatious litigation. Coyle's presentation at trial showed that her true motive in suing Asia Goins was his role in her son's CHINS petition. Marlo Coyle had previously filed over twenty one petitions for protection orders against others with whom she had differences. The trial court noted the extensive online denigration campaign Coyle maintained against Goins and other DCFS providers. The trial court's conditions on Coyle's ability to file future motions or petitions do not completely deny Coyle access to the courts, but rather require its approval before she may file any future motions or petitions. The trial court did not abuse its discretion in declaring Coyle a vexatious litigant and limiting her future participation in the court.

Marlo Coyle also complains about the trial court's imposing CR 11 sanctions and restraining her from continuing an online Facebook besmirching campaign against Asia Goins. Coyle provides no argument addressing the sanctions or restraints. RAP 10.3(a)(6) directs each party to supply, in her brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to authority. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012), *review denied*, 176 Wn.2d 1021, 297 P.3d 708 (2013). Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting *Holland v.*

20

*City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)). Therefore, we decline to address this assignment of error.

*Issue 5: Whether this reviewing court should award reasonable attorney fees and costs incurred on appeal to Asia Goins against Marlo Coyle?*

*Answer 5: No.*

Asia Goins requests appellate attorney fees and costs pursuant to RAP 18.9(a) on the ground that Marlo Coyle's appeal is frivolous. Coyle contends Goins is not entitled to fees or costs because of debatable issues she presents on appeal. We agree with Coyle and deny Goins fees and costs.

RAP 18.9(a) provides, in relevant part:

> The appellate court on its own initiative or on motion of a party may order a party or counsel . . . who . . . files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply . . .

This court abides by the following considerations when determining whether an appeal is frivolous:

> (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980); *see also Griffin v. Draper*, 32 Wn. App. 611, 616, 649 P.2d 123 (1982).

The question of whether Marlo Coyle's appeal is frivolous is a close call, so we resolve the question in Coyle's favor. Coyle's argument concerning the court denying permission of her son to testify has limited merit, since a trial court should infrequently exclude a witness with percipient knowledge. Coyle's argument concerning the construction of RCW 7.90.090 may be weak, but no reported decision has construed the statute.

One may wonder why we affirm the trial court's grant of sanctions against Marlo Coyle for vexatious litigation, but deny Asia Goins fees and costs of appeal. These dissimilar rulings illustrate the difference between vexatious litigation and frivolous litigation.

## CONCLUSION

We affirm the trial court's review of prior protection order petitions filed by Marlo Coyle and the trial court's exclusion of B.J.C. as a witness. We also affirm the trial court's dismissal of Coyle's petition for a protective order and the trial court's declaration of Marlo Coyle as filing a vexatious suit. We deny Asia Goins an award of reasonable attorney fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the

22

No. 32418-4-III
*Coyle v. Goins*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.