IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                      Respondent,<br>     v.<br><br>LUCAS KYLE CARTWRIGHT,<br><br>                  Appellant. | No. 84331-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Following Lucas Cartwright's conviction of unlawful possession of a firearm in the first degree, the trial court entered a no-contact order prohibiting Cartwright from contacting the victim, Christopher Logan, by any means, including via third parties, for ten years. Around the same time, based on the events underlying the no-contact order, Logan initiated a civil suit against Cartwright's parents. On appeal, Cartwright contends that the ten-year prohibition on contacting Logan, particularly through third parties, violates his constitutional right to access our court system. He argues that the no-contact order would prevent him from accessing the courts if Logan testified in the ongoing litigation or if Logan decided to sue him. Because we find the no-contact order reasonably necessary and crime related, we affirm.

FACTS

In early 2020, Lucas Cartwright was living with his mother and stepfather in Everett, Washington. Cartwright had befriended his neighbors, Christopher Logan and Susan Schmitt, and frequently visited with them. Cartwright, Logan,

and Schmitt occasionally used methamphetamine together, though Cartwright testified that he was not a "heavy" user like Logan and Schmitt. The night before the incident in question, all three had been using methamphetamine.

On May 5, Cartwright received a phone call from a close friend, asking him to help wire her money in jail. The friend instructed Cartwright to use her laptop to access her bank account for the wire transfer but forgot to give Cartwright the computer password. Unable to unlock the computer, Cartwright asked Schmitt—who he testified was an "evil guru" with computers—for help. Because it was late at night, Cartwright left the laptop with Schmitt and went home.

The next morning, Cartwright called Schmitt several times without answer. On the fourth or fifth call, Schmitt's friend answered and informed Cartwright that Schmitt was at a Western Union making a money transfer using the information Schmitt had pulled from the laptop. Cartwright testified that he "freaked" and went over to Logan and Schmitt's house to retrieve the laptop.

Logan was home, working on a car in the driveway, when Cartwright arrived. Cartwright told Logan: "Hey, Chris. You're tripping about the computer. I got to get it." Logan replied that he did not care. Cartwright then ran inside and upstairs to find the computer. But on his way back down the stairs, Logan confronted him, shoving Cartwright down to the ground with a metal tool. Cartwright managed to get up, ran back around the house to another entrance, and then ran upstairs to retrieve Logan's gun.

After he retrieved the gun, Cartwright grabbed the computer and fled the house. Logan, in an effort to keep Cartwright from escaping, charged at him and grabbed him around the throat. Cartwright then hit Logan in the head with the gun, and while backing away, warned Logan, "I will shoot you," several times. Logan continued to advance and Cartwright shot him in the leg. While Logan was on the ground, Cartwright quickly got in his car and drove away.

Cartwright was later charged with assault with a firearm in the first degree and unlawful possession of a firearm in the first degree. At trial, Cartwright asserted self-defense. On cross-examination, Logan testified that he was suing Cartwright's parents over the incident. Cartwright testified that he believed the lawsuit against his parents was "frivolous" and a "money grab."

Cartwright was convicted of unlawful possession of a firearm in the first degree but acquitted of assault with a firearm in the first degree. At sentencing, the court imposed a ten year no-contact order protecting Logan, to which Cartwright's counsel did not object. Cartwright appeals.

ANALYSIS

The only issue before us on appeal is whether the no-contact order is overbroad. Cartwright contends that the prohibition on contacting Logan via third parties interferes with his fundamental right to access the courts because he might be called as a witness in the ongoing litigation between Logan and his parents. He also asserts that the no-contact order will infringe on his right to access the courts in the event that Logan decides to sue him. We disagree.

3

The Sentencing Reform Act of 1981 authorizes trial courts to impose "crime-related prohibitions" as a part of any sentence. RCW 9.94A.505(9). A "crime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). Crime-related prohibitions are generally upheld if reasonably crime related. State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). No-contact orders that protect witnesses are also crime-related prohibitions. State v. Armendariz, 160 Wn.2d 106, 113, 156 P.3d 201 (2007). Conditions that interfere with fundamental constitutional rights must be "reasonably necessary to accomplish the essential needs of the State and public order" and "sensitively imposed." Warren, 165 Wn.2d at 32.

We review the imposition of sentencing conditions for an abuse of discretion. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.33d 686 (2010). The same standard applies even when crime-related prohibitions affect a fundamental constitutional right "because the imposition of crime-related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender." Rainey, 168 Wn.2d at 374-75.

In this case, no fundamental right is implicated. Although due process requires litigants be given a meaningful opportunity to be heard, " '[t]here is no absolute and unlimited constitutional right of access to courts. All that is required is reasonable right of access—a reasonable opportunity to be heard.' " In re Marriage of Giordano, 57 Wn. App. 74, 77, 787 P.2d 51 (1990) (alteration in original) (quoting Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 554 (3d

4

Cir. 1985). When "access to the courts is not essential to advance a fundamental right, such as the freedom of association or disassociation . . . , access may be regulated if the regulation rationally services a legitimate end." Giordano, 57 Wn. App. at 77. "Access to the courts is not recognized, of itself, as a fundamental right." Ford Motor Co. v. Barrett, 115 Wn.2d 556, 562, 800 P.2d 367 (1990).

Here, Cartwright does not identify a fundamental right that court access is necessary to advance or protect. For this reason, his reliance on State v. McGuire, 12 Wn. App. 2d 88, 456 P.3d 1193 (2020) is unpersuasive. In McGuire, the defendant challenged a no-contact order prohibiting all contact with his ex-girlfriend, with whom he shared a child, on the grounds that it impermissibly interfered with his right to parent. 12 Wn. App. 2d at 94-95. The court agreed that the no-contact order was overly broad, reasoning that it precluded the defendant from exercising his constitutional right to access the courts to protect his fundamental right to parent. McGuire, 12 Wn. App. 2d at 95-96. McGuire is readily distinguishable from the facts at hand. This case does not involve a fundamental right, such as the right to parent, free speech, or marriage. Thus, absent implication of a fundamental constitutional right, Cartwright's right to access the courts may be regulated.[1] And because the

---

[1] We note that if Cartwright were called as a witness in the civil proceeding, nothing prevents him from seeking a modification of the no-contact order from the court. See, e.g., City of Seattle v. Megrey, 93 Wn. App. 391, 396, 968 P.2d 900 (1998) ("Where [the parties'] interests conflict, the proper solution is to seek permission from the court which issued the [] order to modify the order to allow the appropriate action.").

no-contact order protects a witness in this case, it is reasonably necessary and crime-related.

Affirm.

_Smith, C.J._

WE CONCUR:

_Díaz, J._          _Chung, J._